**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

MARGARET M. TRICE,

    Plaintiff,

v.                                                                Civil No. 05-CV-10144-BC

COMMISSIONER OF                                DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,                                   MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled.  Accordingly, IT IS RECOMMENDED that PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, and that the FINDINGS OF THE COMMISSIONER BE AFFIRMED.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case has been referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

insurance benefits. This matter is currently before the Court on cross motions for summary judgment.

Plaintiff was 47 years of age at the time of the most recent administrative hearing and has completed a ninth grade education. (Tr. at 177.) Plaintiff's relevant work history included work for the Department of Mental Health for approximately 22 years. (Tr. at 48.)

Plaintiff filed the instant claim on June 25, 2002, alleging that she became unable to work on April 27, 2001. (Tr. at 42.) The claim was denied initially. (Tr. at 42-44.) In denying Plaintiff's claim, the Defendant Commissioner considered osteoarthrosis and obesity as possible bases of disability. (*Id.*)

On January 8, 2004, Plaintiff appeared with a representative before Administrative Law Judge (ALJ) Regina Sobrino, who considered the case *de novo*. In a decision dated May 25, 2004, the ALJ found that Plaintiff was not disabled. (Tr. at 15-23.) Plaintiff requested a review of this decision on June 25, 2004. (Tr. at 14.)

The ALJ's decision became the final decision of the Commissioner when, after the review of an additional exhibit[1] (AC-1, Tr. at 170-71), the Appeals Council, on April 15, 2005, denied Plaintiff's request for review. (Tr. at 4-12.) On May 25, 2005, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**B.     Standard of Review**

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts relevant to an application for disability benefits. A federal court "may not try the case de novo, . . . ." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir.1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

3

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

**C.     Governing Law**

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

A claimant must meet all five parts of the test set forth in 20 C.F.R. § 404.1520 in order to receive disability benefits from Social Security. The test is as follows:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.
>
> Step Three: If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.
>
> Step Four: If the claimant is able to perform his or her previous work, benefits are denied without further analysis.
>
> Step Five: If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th

5

Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 687-88 (6th Cir. 1985). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Preslar*, 14 F.3d at 1110. "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Id.* "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ." *Id.*

### D. Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was seen by Dr. Latonya Thomas on April 11, 2001, for complaints of right leg pain and headaches. (Tr. at 111). Dr. Thomas recommended a venous doppler test. An x-ray of Plaintiff's hip did not reveal any fractures, and no evidence of any hip joint disease was seen. The doctor also recommended a bone scan. (Tr. at 96.) Plaintiff was seen again on April 18, 2001, and she reported that the pain in her hip was ongoing and more tender when weightbearing. The doctor reported that the venous doppler study was negative. Straight leg raising tests were also negative, and Plaintiff could walk on her heels and toes. Since Plaintiff's x-ray of the right hip was negative, the doctor said he would proceed with a bone scan. (Tr. at 110.) A total body scan was done on April 23, 2001, and there was no indication of any acute bony injury, particularly in the right hip. (Tr. at 94.) A pelvic ultrasound was done on April 26, 2001, with only a small gland cyst seen in the lower uterine segment. Otherwise, the examination was unremarkable. (Tr. at 112.)

Plaintiff saw Dr. Thomas again the next day, for continued hip pain. The doctor stated that the cause of Plaintiff's right hip pain was unclear at this point unless it could be related to a bursitis or synovitis. (Tr. at 109.) According to the doctor, "Clinically there was no significant symptoms

6

suggestive of it" except for one positive orthopedic test. (*Id.*) She recommended that Plaintiff see an orthopedic doctor.

Plaintiff was seen by Dr. Thomas again on May 24, 2001, after being off work for four weeks with bursitis of the right hip. She reported constant nagging discomfort. Plaintiff's weight was 234 lbs. Dr. Thomas ordered an MRI and prescribed a new medication for pain. Deep tendon reflexes were normal, as was range of motion testing. Blood flow appeared normal. (Tr. at 107.) An MRI of the right hip on June 11, 2001, showed a tiny amount of fluid in the right hip joint, and was otherwise unremarkable. (Tr. at 93.)

Plaintiff returned to Dr. Thomas on July 3, 2001. Plaintiff was concerned about a lump underneath the breast area, as well as hip problems, with increasing discomfort when sitting and driving. The doctor diagnosed Plaintiff with mild sinusitis, tenosynovitis$^2$ of the right hip, and a small lump in subcutaneous tissue. He ordered a mammogram. Plaintiff's weight was 239 lbs. (Tr. at 105.)

Plaintiff was seen again by Dr. Thomas on August 9, 2001, due to tenderness that developed in the front of the right knee. Plaintiff was to start physical therapy on this date for her right hip. Plaintiff's examination was unremarkable, and Dr. Thomas diagnosed bursitis. No limitations in range of motion were found. She was prescribed medication and advised to return to work with restrictions. Plaintiff's weight was 234 lbs. (Tr. at 103.)

On October 9, 2001, Plaintiff was seen for a recheck of the right hip. She reported improvement but still some symptoms. Examination was unremarkable other than discomfort on rotation of the hip. Plaintiff was prescribed medications for pain. (Tr. at 101-02.)

---

$^2$Tenosynovitis is defined as an "inflammation of the sheath or membrane which surrounds a tendon." 5 J. E. Schmidt, M.D., ATTORNEYS' DICTIONARY OF MEDICINE T-50.

Plaintiff was seen by Dr. Thomas on February 20, 2002, for a recheck of her right hip and a sore throat and cough. Plaintiff had been diagnosed with bronchitis a week earlier and given medication. Plaintiff still complained of pain in her right hip area. Flexion and extension of the hip produced "no significant discomfort[,] it is only with weightbearing that she tends to have the problem." (Tr. at 99.) Plaintiff was not able to follow through with recommended treatment plans due to the loss of her insurance and not being able to work. Plaintiff's medication was changed and a follow-up examination was recommended in four weeks. (*Id*.)

On June 4, 2002, Plaintiff was seen for complaints of migraine headaches, gastroesophageal reflux disease, and pain in her right hip. Plaintiff's weight was 230 lbs. After undergoing physical therapy, anti-inflammatory agents, and pain medications, she still continued to have pain localized in the right hip. She stated that she would not qualify for any other jobs or retraining without first getting a GED. Dr. Thomas advised Plaintiff to seek total disability, however, she was concerned because she did not have health insurance. (Tr. at 98.)

On September 9, 2002, Plaintiff was examined at the request of the Disability Determination Service by Dr. Joseph Craig. Plaintiff complained of persistent pain in the right hip. (Tr. at 115.) She denied any traumatic events as the cause for the pain. The doctor reported that Plaintiff walked with a limp but did not require a cane or walker for assistance. (Tr. at 116.) Plaintiff was able to walk on her heels and toes, and she was also able to squat and recover. The doctor found no sign of ligamentous weakness or deformity in the joint or bones of the right hip, knee and ankles. (*Id*.) Range of motion in the hip indicated an approximate 10% limitation in extension, but normal range of motion in backward extension and rotation. (Tr. at 121.) Range of motion in the left hip and both knees was found to be normal. (*Id*.) The doctor found that nerve sensation was intact, and Plaintiff was able to perform all the gross and fine motor dexterity hand

8

skill tests requested by the doctor. (Tr. at 117.) Dorsal lumbar range of motion was normal, and no tenderness was found in the spine. Straight leg raising tests were negative. (*Id.*) The doctor diagnosed right hip pain, right leg bursitis, obesity, and noted an MRI report suggestive of tenosynovitis of the right hip. (*Id.*)

Plaintiff was seen by Dr. Thomas on January 9, 2003, for medication refills. Plaintiff stated that she was still having pain and discomfort in her right hip. The doctor reported that Plaintiff evidenced what was described as "flexibility" in the right hip with flexion and rotation which caused Plaintiff discomfort. (Tr. at 146.) The doctor found no restrictions in range of motion in the knee or any swelling. (*Id.*) Pressing on the hip and leg bone produced no discomfort. Deep tendon reflexes and blood flow were considered normal. (*Id.*) Plaintiff was diagnosed with tenosynovitis with right hip pain, peptic ulcer disease, fatigue, and chronic sinus congestion/sinusitis. Dr. Thomas recommended a fasting lipid profile and a mammogram, along with CBC and thyroid function testing. Prescriptions for medication refills were given, and a complete physical examination was scheduled. (Tr. at 146.)

In February and March 2003, Dr. Thomas completed a series of questionnaires she apparently received from the Disability Determination Service. The doctor stated that Plaintiff had severe pain in the right hip, but no pain in the left hip or the knees, ankles or feet. (Tr. at 134.) Plaintiff had been suffering pain for greater than two years, and it brought about limitations of motion. (*Id.*) The doctor stated that Plaintiff suffered pain when flexing her right hip more than 15 degrees. She stated that there was no evidence of joint space narrowing, bony destruction, or anatomical deformity in the hip. (*Id.*) The doctor stated that Plaintiff's limitations seriously interfered with her ability to independently sustain actions and that she had recently required assistance in walking. (Tr. at 135.) The doctor stated that Plaintiff had difficulty walking at a

reasonable pace without stopping, walking on rough surfaces, and carrying out routine ambulatory activities, such as shopping and climbing steps.  (*Id*.)  The doctor felt that Plaintiff's symptomatology was consistent with medical findings and that Plaintiff's symptoms interfered with her ability to reliably attend work.  (Tr. at 136.)  The doctor stated that Plaintiff's pain was constant.  (Tr. at 137.)  The doctor found no evidence of swelling in Plaintiff's lower legs or that she needed to elevate her legs.  (Tr. at 137-38.)  The doctor felt that Plaintiff could not stand and walk or sit for sustained periods of time.  (*Id*.; *see also* Tr. at 139-40.)  In the doctor's opinion, Plaintiff required complete freedom to rest at any time without restrictions and to be able to lay down for substantial portions of each day in order to gain relief from pain.  (Tr. at 143.)

On June 11, 2003, Plaintiff was seen by Dr. Thomas for cough, shortness of breath, difficulty breathing, and nasal congestion.  The doctor noted again that Plaintiff had a history of chronic allergies and sinus problems.  An ear nose and throat exam was unremarkable, but she had wheezing in her lungs.  Plaintiff was diagnosed with acute bronchitis.  (Tr. at 154.)

In a statement of medical needs prepared for the Family Independence Agency and completed June 19, 2003, Dr. Thomas stated that Plaintiff suffered severe right hip pain and that she would be unable to work at any job for the rest of her life.  (Tr. at 150.)

Plaintiff was seen by Dr. Thomas on August 11, 2003, to have sutures removed from a stab wound in her left shoulder and to have her left hand examined.  Plaintiff was also still having sinus problems and felt that the symptoms were worse since having sinus surgery.   The laceration in Plaintiff's shoulder was healing well without drainage.  Her hand was slightly puffy, but she had good range of motion of her fingers and wrist and was able to make a complete fist.  The doctor recommended that Plaintiff see a pulmonologist with regard to her chronic cough.  (Tr. at 153.)

Progress notes dated January 9, 2004, indicate that Plaintiff continued to have chronic hip pain with impairment of ability to ambulate, sit, and stand; chronic headaches with a known history of migraines; sleep apnea for which she uses a breathing machine; chronic cough related to allergic rhinitis; and peptic ulcer disease. Plaintiff was continued on her current medications. (Tr. at 152.)

At the administrative hearing, a vocational expert (VE) testified. In response to a hypothetical question presuming a person of Plaintiff's circumstances who was limited to carrying no more than ten pounds occasionally and five pounds more frequently, in circumstances which did not require pushing or pulling, the ability to stand and walk for up to two hours and sit for six hours, along with the ability to sit or stand at will, under conditions in which there would be no airborne irritants, little if any climbing of stairs, no crouching, kneeling, crawling, climbing, or overhead reaching or the driving of vehicles, and which required simple, routine tasks, in which walking with a cane could be accommodated, the VE identified 1,600 sedentary unskilled surveillance system monitor jobs consistent with these hypothetical conditions. (Tr. at 208.) The VE also identified 1,800 information clerk and 6,500 reception clerk jobs also consistent with these hypothetical conditions.

**E.    ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since April 27, 2001. (Tr. at 22.) At step two, the ALJ found that Plaintiff's tenosynovitis of the right hip, obesity, sleep apnea, and osteoarthritis of the lumbar spine, shoulders, knees, and ankles were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could not perform her previous work as a cleaner. (*Id.*)

At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the national economy. (Tr. at 23.)

Using the Commissioner's grid rules as a guide, the ALJ found that:

> . . . there are a significant number of jobs in the regional and national economy that the claimant could perform. Examples of such jobs include reception clerk, surveillance system monitor, and information clerk. Vocational expert testimony establishes that these jobs exist in significant numbers in regional and national economy.

(*Id*.)

### F.    Analysis and Conclusions

### 1.    Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of sedentary work. (Tr. at 23.)

> Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a) (1991). Social Security Ruling (SSR) 83-10 clarifies this definition and provides that:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

## 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff primarily bases her claim for benefits upon the impairments caused by the condition of her right hip. The medical evidence in the administrative record indicates that in April 2001, an x-ray of Plaintiff's hip failed to reveal any fractures or any evidence of hip-related disease. (Tr. at 96.) A total body bone scan later the same month showed no indication of any acute bony injury. (Tr. at 94.) Straight leg raising tests during the same period were negative. (Tr. at 110.) Later the same month, Dr. Thomas stated that, clinically, there were no significant symptoms suggestive of bursitis or synovitis in the hip except for one positive orthopedic test. (Tr. at 109.) In May 2001, the doctor reported that deep tendon reflexes in Plaintiff's legs and blood flow were normal. An MRI in June 2001 showed a tiny amount of fluid in the right hip but was otherwise unremarkable. (Tr. at 93.) In August 2001, no limitations in range of motion were seen. These objective medical findings by Plaintiff's treating physician, I suggest, are corroborated by the findings of the Commissioner's examining physician, Dr. Craig. Although Plaintiff walked with a limp, Dr. Craig reported that Plaintiff had the ability to walk on heels and toes and squat and recover. (Tr. at 116.) Range of motion studies demonstrated only an approximate 10% decrease in right hip range of motion. (Tr. at 121.) Dr. Craig could find no evidence of weakness in the ligaments, misalignment of the hip joint, or bony deformity. (Tr. at 116.) Although Plaintiff

clearly suffers from limitations caused by the condition of her right hip, I suggest that the objective medical findings outlined above constitute substantial evidence supporting the ALJ's conclusion that Plaintiff could return to a limited range of sedentary exertional work which could be accomplished either sitting or standing and with the use of a cane. I therefore suggest that Plaintiff has failed to meet her burden of proving that she is disabled as this term is defined in the Social Security Act.

Plaintiff points to the opinion expressed by Dr. Thomas in a statement of medical needs that she will be unable to work at any job for the rest of her lifetime. (Tr. at 150.) I suggest, however, that this opinion is not controlling. Although the opinions of treating physicians are entitled to great weight, and, if uncontradicted, are entitled to complete deference, *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524 (6th Cir. 1992); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1370 (6th Cir. 1991), the Social Security Act and the case law of this circuit make clear that the Commissioner, not a doctor, even a treating physician, can make the ultimate finding of disability. In *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234-35 (6th Cir. 1993), the Sixth Circuit affirmed Judge Hackett's finding that plaintiff was not disabled, despite several reports by a physician stating that she was "unemployable." The court was unpersuaded: "[U]nemployable is not equivalent to disabled." (*Id.* at 1235.) I therefore suggest that the ALJ did not err in failing to accord Dr. Thomas's opinion controlling deference, particularly in light of the fact that it is inconsistent with the doctor's own objective medical findings outlined above, as well as those of Dr. Craig, the Commissioner's examining physician.

The ALJ's findings also follow the opinions of the VE which came in response to proper hypothetical questions that were appropriately consistent with the objective medical findings contained in the medical records available to the ALJ, and in particular, findings and assessments

of Dr. Thomas. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 481 (6th Cir. 1988); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Social Security regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b) (1995); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c) (1995); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.* When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at **3 (6th Cir. Ohio Feb. 11, 1999).

In the present case, the ALJ acknowledged that Plaintiff had an impairment that could cause pain; however, he found that the severe and debilitating nature of Plaintiff's alleged pain was not fully credible and provided reasons for this conclusion. The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility

of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Under these standards, I suggest that there is insufficient basis on this record to overturn the ALJ's credibility determination.

After review of the record, I conclude that the decision of ALJ Sobrino which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Mullen*, 800 F.2d at 545, as the decision is supported by substantial evidence.

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail

with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                              s/ *Charles E. Binder*
                                              CHARLES E. BINDER
Dated: January 9, 2006             United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on James A. Brunson, and served in the traditional manner on Margaret M. Trice and Honorable David M. Lawson.

Dated: January 9, 2006                           By    s/Mary E. Dobbick
                                                                       Secretary to Magistrate Judge Binder